The Court adopts the parties' proposed briefing schedule: Defendants shall file their motion to dismiss by November 3, 2026, Plaintiff shall file its opposition by December 2, 2026, and Defendants shall file any reply by December 17, 2026.

The Clerk of Court is respectfully directed to close Docket Number 14.

SO ORDERED.
October 15, 2026
New York, New York

JOHN P. CRONAN
United States District Judge

FBT Gibbons

**Daniel S. Weinberger**
Partner
+1 212.613.2063 (t)
+1 212.554.9632 (f)
dweinberger@fbtgibbons.com

October 9, 2026

**VIA ECF AS A LETTER-MOTION AND VIA E-MAIL**
The Honorable John P. Cronan
United States District Judge
Southern District of New York
500 Pearl Street, Room 1320
New York, NY 10007
CronanNYSDChambers@nysd.uscourts.gov

**Re:** ***Encore Funding II, LLC v. Elevance Health, Inc.; Anthem HP, LLC,***
**Case No. 1:26-cv-08041 (S.D.N.Y.) – Pre-Motion Letter to Stay and Dismiss**

Dear Judge Cronan:

We represent Defendants, Elevance Health, Inc. ("Elevance") and Anthem HP, LLC ("Anthem") (together, "Defendants"), in the above-referenced action. In accordance with Rules 1.A and 6.A of Your Honor's Individual Rules and Practices in Civil Cases, we submit this pre-motion letter notifying the Court of Defendants' anticipated motion to compel arbitration or dismiss the action pursuant to Fed. R. Civ. P. 12(b) and to propose a motion briefing schedule.

## FACTUAL BACKGROUND

Anthem is a New York Managed Care Organization ("MCO") that provides Medicaid managed care health benefit plans in New York State, including plans that offer to eligible members the option to elect benefits under the New York State Consumer Directed Personal Assistance Program ("CDPAP"). (*See* Compl. ¶¶ 14-15, 19.) Under CDPAP, eligible Medicaid members receive care, home health services, and certain skilled nursing services from consumer directed personal assistants ("CDPAs"). New York's regulatory framework required those services to be supported by a fiscal intermediary responsible for processing the CDPAs' wages and benefits and performing related administrative functions. (*See* 18 N.Y.C.R.R. § 505.28.)

Non-party Shopno 1 LLC ("Shopno") provided fiscal intermediary services in New York. (Compl. ¶ 17.) On October 1, 2023, Anthem (under its prior name, HealthPlus HP, LLC) contracted with Shopno to provide fiscal intermediary services in relation to Anthem's provision of CDPAP home health care services for eligible New York Medicaid members (the "Administrative Agreement"). (*See id.* ¶ 19; **Exhibit A** (Admin. Agmt. at 1 & ¶ 2)[1].) Under this

[1] The Administrative Agreement is incorporated by reference into the Complaint. (Compl. ¶ 18.)

arrangement, Anthem received Medicaid funding from the New York Department of Health and paid Shopno for authorized CDPAP services provided to its members. (*See* Admin. Agmt. §§ 3, 9, 9.1; **Exhibit B** (Amend. to Admin. Agmt. at 1).) Those payments, which came "in whole or in part, from Federal funds," were intended to support the provision of Medicaid-covered care, including the wages and benefits of the CDPAs who furnished that care. (Admin. Agmt. §§ 9.1, 23.) Shopno, as the fiscal intermediary, was responsible for processing those wages and benefits. (*Id.* § 2.) Elevance, an affiliate of Anthem, was not a party to this arrangement.

According to the Complaint, on February 5, 2024, Plaintiff Encore Funding II, LLC ("Encore") entered into a Factoring and Security Agreement ("Factoring Agreement") with Shopno pursuant to which Encore advanced funds to Shopno. (Compl. ¶ 22; *id.*, Ex. A.) Under the Factoring Agreement, Shopno allegedly granted Encore a perfected security interest in its existing and future accounts receivables, including from Anthem. (Compl. ¶¶ 23-25.) Encore alleges that Shopno defaulted under the Factoring Agreement and, on March 3, 2025, Encore notified Defendants in writing that (a) Shopno granted Encore a security interest in, and assigned to Encore as collateral security, the full amount of all accounts owed by Defendants to Shopno and (b) all remittances of such accounts were to be made only to Encore. (*Id.* ¶¶ 33, 43, 56-57, 60.) Encore claims that despite having notice of Encore's interest, "Defendants paid at least $2,849,430 to Shopno" between March 20, 2025 and May 19, 2025. (*Id.* ¶¶ 52-54.) Encore now asserts claims under Article 9 of the U.C.C. and New York common law seeking to impose "the burden of double payment" on Defendants—in other words, to require Defendants to make the same payment of over $2.8 million to Encore that Anthem already made to Shopno. (*Id.* ¶ 67.)

## BASES FOR ANTICIPATED MOTION

### I. Elevance is Not a Proper Party to this Lawsuit

At the outset, Elevance must be dismissed from this action because Elevance has no contractual relationship with Shopno and because this Court lacks personal jurisdiction over it. Elevance is not a party to the Administrative Agreement with Shopno and has no obligations under it. The Complaint does not plead any non-conclusory allegations showing otherwise, nor could it. To the extent the Complaint makes vague references to "Defendants" (*id.* ¶¶ 18, 35, 38-40), those allegations are contradicted by the Administrative Agreement. Moreover, Elevance has not engaged in any forum-directed conduct with respect to Encore's claims, and is not incorporated and does not have its principal place of business in New York (*id.* ¶ 11). Thus, the Court lacks personal jurisdiction over Elevance and the Complaint fails to state a claim against it.

### II. Encore Should be Compelled to Arbitrate this Dispute

Separately, this case should be stayed and compelled to arbitration. Paragraph 29 of the Administrative Agreement requires arbitration of any dispute arising under the agreement. Encore's claims, though couched as claims under Article 9 of the U.C.C., are in fact assigned contractual claims for payment under the Administrative Agreement. Because Encore is seeking

to sue as Shopno's assignee under the Administrative Agreement, it assumes Shopno's contractual obligation to arbitrate. *See DS-Concept Trade Invest LLC v. Wear First Sportswear, Inc.*, 128 A.D.3d 585, 585-86 (1st Dept. 2015).

**III. Encore's Claims are Barred by Medicaid Anti-Assignment Rules**

Alternatively, Encore's claims must be dismissed in their entirety because federal and state Medicaid anti-assignment rules prohibit Anthem (the only properly-named Defendant) from paying Encore funds that Anthem allegedly owed to Shopno. Federal Medicaid law requires that Medicaid payments be made only to the person or institution who provides the care or service, and (subject to exceptions not applicable to Encore) prohibits payment to third parties pursuant to an assignment or similar arrangement. *See* 42 U.S.C. § 1396a(a)(32); 42 C.F.R. § 447.10(a), (d). The implementing regulation likewise expressly prohibits payment to or through a "factor," *see* 42 C.F.R. § 447.10(h), a category into which Encore squarely falls. New York law similarly provides that "no assignment of the claim of any supplier of medical assistance shall be valid and enforceable" against the Department of Health or a social services district, N.Y. Soc. Serv. Law § 367-a(1)(a), and specifically limits the application of Article 9's general account-debtor payment rules with respect to health care insurance receivables, *see* N.Y. U.C.C. §§ 9-406(h)(1), 9-408(c). The payments Anthem allegedly owed (and paid) to Shopno consist of Medicaid funds made available to Anthem through the Medicaid program and designated to fund Medicaid program obligations, including the wages, benefits, payroll taxes, and related employment costs of CDPAs. In other words, under the CDPAP regulatory framework, Anthem and Shopno serve as pass-through entities for the payment of Medicaid claims to providers. Medicaid requires that those funds be paid to the care providers and prohibits Anthem from paying them to a factor such as Encore. Indeed, the entire purpose of the Medicaid anti-assignment rules would be defeated if these payments could be made to a factor simply because, as required by the regulatory scheme itself, the Medicaid funds flow to providers indirectly through a MCO and fiscal intermediary rather than directly from the State. Thus, Encore's claims against Defendants must fail because its claims under Article 9 of the U.C.C. cannot supersede Medicaid's anti-assignment regime. Encore's tag-along conversion claim must be dismissed for the same reasons, and because it is duplicative of Encore's Article 9 claims, the funds at issue are not specifically identifiable, and Encore has no immediate right of possession to them from Defendants.

The parties have conferred regarding a proposed briefing schedule on Defendants' anticipated motion and, assuming Encore does not seek to amend or withdraw its complaint, the parties have agreed as follows: (1) Defendants' motion to dismiss due November 3, 2026; (2) Encore's opposition due December 3, 2026; and (3) Defendants' reply due December 17, 2026.

Respectfully submitted,

Daniel S. Weinberger